UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VERNON B. PARSONS III,

      Plaintiff,

    v.

DON THOMAS HALL, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITY AS CIRCUIT JUDGE,
12TH JUDICIAL CIRCUIT OF
FLORIDA; *et al.*;

      Defendants.

Case No. 2:25-cv-1187-KCD-KRH

_____/

## **ORDER**

Plaintiff Vernon Ballard Parsons III has sued almost everyone associated with his divorce case, including his former spouse, the presiding state circuit judge, and a three-judge state appellate panel. (*See* Doc. 4.)[1] Defendant Holly Beth Chernoff was a court-appointed special magistrate tasked with disposing of the couple's marital duplex. (*Id.* at 4.)[2] Parsons levels a barrage of federal and state claims against Chernoff—ranging from RICO violations to civil theft, conversion, and fraud—alleging that she exceeded her official mandate by pocketing insurance proceeds, hijacking his

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] For ease of reference, the Court refers to the page numbers generated by its electronic filing system for all docket entries and exhibits.

mortgage account, and orchestrating the looting of his personal property. (*Id.* at 4-6.) Chernoff now moves to dismiss the complaint, arguing that quasi-judicial immunity shields her conduct, res judicata forecloses the suit, and the complaint is an unartful shotgun pleading. (Doc. 12.)

## I. Background

This dispute started in the Circuit Court for DeSoto County, Florida, where Parsons and his former spouse litigated their divorce. In June 2022, Circuit Judge Don T. Hall entered a final order mandating the sale of the parties' joint marital asset—a duplex located in Arcadia. (Doc. 4 at 4.) To effectuate that sale, Judge Hall appointed Chernoff as a special magistrate. This appointment order vested Chernoff with sweeping authority to manage the property's disposition, including the power to select listing agents, execute listing agreements, sign contracts, and act as an escrow agent for any resulting proceeds. (*Id.* at 63-65.)

As the divorce proceedings dragged on, the state court expanded Chernoff's role. After Parsons was found in contempt, the state court authorized her to collect tenant rents, interact directly with mortgage lenders, and deposit insurance proceeds into her trust account—funds that

the state court ultimately authorized her to draw from to satisfy her fees. (Docs. 12-2 12-3.)[3]

Unhappy with these state-court developments, Parsons filed this case. His complaint paints a dark picture of systemic corruption, alleging that Chernoff conspired with Judge Hall through a concealed "Naples network" to systematically loot his home and personal belongings. Parsons' specific factual allegations against Chernoff are difficult to decipher. His narrative frequently interweaves dense conspiratorial theories with disconnected structural grievances. As best the Court can parse them, he claims that Chernoff committed bank fraud by "hijacking" his mortgage account, unlawfully diverting $27,651.48 in homeowner's insurance proceeds to herself, and directing a private crew to trespass on the property and "loot" his furniture, electronics, and appliances. (Doc. 4 at 2, 5.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to

---

[3] Chernoff requested judicial notice of Judge Hall's various circuit court orders, and Parsons clarified in his response that he has no objection to the Court doing so. (Doc. 12 at 2, Doc. 33 at 2.) Because these documents are court records whose accuracy cannot reasonably be questioned, the Court may (and will) take judicial notice of them at this stage. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

Chernoff's motion presents a full menu of defenses, ranging from procedural attacks to claim preclusion. But the Court has no need to go down each of those rabbit holes. A threshold defense is completely dispositive here: quasi-judicial immunity.

The doctrine of quasi-judicial immunity exists to prevent court-appointed officials from becoming collateral damage of a disgruntled litigant's frustration. It is well-settled that this immunity shields not only judges but also the structural adjuncts appointed to carry out judicial directives—including receivers, special masters, and magistrates. *See Prop. Mgmt. &*

4

*Invs., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985). When an individual acts as an extension of the court, her conduct is functionally the court's conduct and is protected by its immunity. *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994).

Stripped of their conspiratorial labels, the allegations against Chernoff stem from actions she was explicitly authorized—and indeed, commanded— to perform by the state court. Parsons complains bitterly about Chernoff communicating with his mortgage lender, collecting tenant rents, and intercepting insurance proceeds. But those exact powers are explicitly enumerated in Judge Hall's post-judgment orders. (*See* Doc. 12-1, Doc. 12-2, Doc. 12-3.) Even the messy realities of evicting tenants or clearing out personal property fall squarely within her judicial mandate to "take any and all action necessary to promote and facilitate the sale of the Duplex." (Doc. 12-1 at 2.) Parsons cannot strip away this immunity simply by claiming that Chernoff's "practices were in bad faith or malicious." *Holton v. Sudzina*, No. 8:25-CV-1546-WFJ-CPT, 2026 WL 25186, at *1 (M.D. Fla. Jan. 5, 2026). The relevant inquiry is only whether the challenged conduct was functionally tied to the judicial process. It plainly was here. *See Roland*, 19 F.3d at 556 n.4 ("When an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious.").

Parsons tries to bypass this roadblock by arguing that Chernoff's appointment was void *ab initio*. (Doc. 33 at 5.) He contends that Judge Hall lacked jurisdiction to appoint a special magistrate because the underlying divorce case had already been closed and he never consented to the appointment. (*Id.* at 5-6.) But to overcome quasi-judicial immunity, a plaintiff cannot merely show that a court's order was legally erroneous. Instead, he must demonstrate that the challenged conduct occurred in the "clear absence of all jurisdiction." *Dixon v. Abruzzo*, No. 23-12277, 2024 WL 4132504, at *1 (11th Cir. Sept. 10, 2024).

There is a vast gulf between an erroneous exercise of jurisdiction and a total absence of it. Florida circuit courts possess broad subject-matter jurisdiction over domestic relations cases and retain inherent, continuing jurisdiction to enforce their own final dissolution decrees. *See Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 803 (Fla. 2003). Because the state court possessed the fundamental power to oversee the dissolution and enforce the sale of the duplex, any procedural missteps Judge Hall may have made in appointing Chernoff do not open her up to personal liability. *See Montgomery v. Robinson*, No. CV 24-192-KD-MU, 2024 WL 3565155, at *4 (S.D. Ala. June 27, 2024) ("[A] mistake or an act in excess of jurisdiction does not abrogate judicial immunity, even if it results in grave procedural errors."). If Parsons believed the appointment order or subsequent enforcement directives were

6

wrong, his remedy was to pursue an appeal in the state system—not to launch a collateral action against the court's appointee in federal court. Because Chernoff was executing facially valid judicial orders issued by a court of competent jurisdiction, she is entitled to absolute quasi-judicial immunity.

When a defense as formidable as quasi-judicial immunity applies on the face of the pleadings, allowing leave to amend would be an exercise in futility. *Austin v. McCann*, No. 22-13157, 2023 WL 3335312, at *2 (11th Cir. May 10, 2023); *Hatcher v. Ala. Dep't of Hum. Servs., Child Support Enf't Div.*, 747 F. App'x 778, 782 (11th Cir. 2018). Federal courts are not a forum for appealing state-court rulings, and judicial immunity bars Parsons' attempt here. Accordingly, Chernoff's Motion to Dismiss (Doc. 12) is **GRANTED**, and she is dismissed from this case **WITH PREJUDICE**. As there are still claims pending against other defendants, the case will remain open.

**ORDERED** in Fort Myers, Florida on June 22, 2026.

_____

Kyle C. Dudek
United States District Judge

7